IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LARRY LEE UNDERHILL,

                    Plaintiff,

        v.                                                  OPINION and ORDER

ANDREW M. SAUL,                                             19-cv-816-jdp
Commissioner, Social Security Administration,

                    Defendant.

Plaintiff Larry Lee Underhill seeks judicial review of a final decision of defendant Andrew M. Saul, Commissioner of Social Security, finding him not disabled under the Social Security Act. Underhill contends that the administrative law judge (ALJ), Carla Suffi, erred by: (1) failing to adequately consider two consultative examiner opinions; (2) failing to account for his medication side effects; and (3) conducting a faulty credibility analysis. The court rejects each of these contentions and will affirm the commissioner's decision. The oral argument scheduled for May 28, 2020, is canceled.

ANALYSIS

Underhill has been seeking disability benefits since 2013, but this appeal concerns his second application, in which he seeks benefits for a period from February 2017 to the present. In a November 2018 decision, the ALJ found that Underhill suffered from three severe impairments: (1) lumbar degenerative disc disease with disc herniation; (2) major depressive disorder; and (3) panic disorder. She concluded that Underhill had the residual functional capacity to perform light work, with the following additional restrictions:

- Can occasionally stoop, crouch, crawl, or climb;

- Can adapt to the demands of and sustain the attention and concentration to carry out simple, routine tasks on a sustained basis and make simple work-related decisions;

- Can never perform fast-paced, production line work tasks that are timed;

- Should only perform goal-oriented work tasks;

- Requires the ability to shift positions from sitting to standing, in that he can stand 20 to 30 minutes at a time, and then would require the ability to sit for up to 5 minutes before he resumes standing.

R. 21–22.[1] Relying on the testimony of a vocational expert, the ALJ concluded that Underhill could have performed jobs that exist in significant numbers in the national economy, such as a sorter, packer, or inspector, so she found him not disabled within the meaning of the Social Security Act. R. 29.

On appeal, Underhill contends that the ALJ erred by: (1) failing to address the opinions of consultative examiners rendered in 2013 and 2014; (2) failing to account for the grogginess, crankiness, and other side effects that Underhill experienced as a result of his medications; and (3) misrepresenting Underhill's activities of daily living and drawing unsupported conclusions from them. The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The court reviews the record as a whole, but it cannot reconsider facts or reweigh evidence to decide whether a claimant is in fact disabled. *Id.*

---

[1] Record cites are to the administrative transcript, located at Dkt. 9.

## A. Consultative examiner opinions

Underhill contends that the ALJ erred by failing to account for opinions rendered by state agency consultative examiners Dr. Jul Haker and Dr. Frank Elmudesi. Haker conducted a physical exam and issued a report on August 23, 2013, in connection with Underhill's first application for disability benefits. R. 319–22. Haker opined that Underhill was "on permanent work restrictions of lifting no more than 10 pounds," and that Underhill "would be better suited for a sedentary position." R. 321. Elmudesi conducted a psychological evaluation, also in connection with Underhill's first application for benefits. In a January 27, 2014 report, Elmudesi opined that Underhill was "likely to struggle to remember and carry out simple instructions particularly if he's experiencing increased pain." R. 327.

The ALJ didn't acknowledge these specific statements in her decision on Underhill's second application for benefits. But both opinions predated Underhill's asserted disability onset date by more than three years. Although the ALJ is required to consider "all evidence" in the case record, 20 C.F.R. § 404.1520(a)(3), she need not account for evidence that falls outside the period of alleged disability unless that evidence is probative of the claimant's condition during the relevant period. *See, e.g.*, *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015).

Underhill doesn't explain in his opening brief how either opinion reflects on Underhill's condition during the relevant period. In his reply brief, Underhill contends that Haker's assessment of "permanent work restrictions of lifting no more than 10 pounds" makes it "clear that this opinion would reflect on [Underhill's] current functioning." Dkt. 16, at 1.[2] Haker's

---

[2] Underhill doesn't say anything about Elmudesi's opinion, even in his reply brief, so the court concludes that Underhill has abandoned any argument based on the ALJ's failure to consider

use of the term "permanent" suggests that he believed Underhill's lifting restriction would still apply in 2017. But even assuming that the ALJ erred by neglecting to discuss this aspect of Haker's opinion, the court concludes that her failure to do so was harmless.

Underhill testified repeatedly at the hearing that he could lift 20 pounds, R. 72, 73, 87–88, although he said that his ability to do so on a repetitive basis had gotten worse over time. R. 88. Consistent with this testimony, the ALJ limited Underhill to light work, which requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Underhill doesn't explain why the restriction to light work was inadequate to address his limitations, or why the ALJ should have credited a three-year-old medical opinion over Underhill's own account of what he was able to do during the relevant period. So the court will not remand the case on that basis. *See Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (ALJ did not err by discounting medical opinion that was inconsistent with the claimant's own testimony about his limitations).

## B. Medication side effects

Underhill takes five drugs, *see* R. 405, 432, which make him cranky, foggy, drowsy, and interfere with his focus. R. 91, 435, 446, 452. Underhill contends that the ALJ failed to address these side effects, rendering her RFC assessment deficient because "the ALJ's awareness of these side effects may have had an additional impact, particularly in combination with [Underhill's] pain and anxiety, upon the ability to perform sustained and competitive work activities." Dkt. 13, at 9.

---

that opinion.

4

But the ALJ was aware of Underhill's medication side effects. She questioned Underhill about them at the hearing. *See* R. 82, 83–84. And she acknowledged them in her opinion. *See* R. 21 (noting that Underhill "has fogginess as a side effect of his psychotropic medication"); R. 22 (noting reports of "fogginess"); R. 26 (noting "reported poor concentration, memory and mental fogginess"); *id.* (noting Underhill's wife's reports that Underhill "has become more easily frustrated and angry"). And, most important, she included restrictions in the RFC that were related these side effects, such as limiting Underhill to simple, routine tasks and simple work-related decisions with no timed, fast-paced production line work tasks. R. 21–22.

Although Underhill asserts in general terms that the RFC was flawed, he does not explain why these restrictions were inadequate, or what additional restrictions would be necessary to account for his medication side effects. "[T]he mere listing of side effects is insufficient to establish functional limitations . . . ." *McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018); *see also Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (any error in RFC determination was harmless where claimant failed to adduce evidence justifying further restrictions). So the court will not remand the case on that basis either.

## C.  Credibility determination

Underhill next challenges the ALJ's decision not to fully credit his statements about the intensity, persistence, and limiting effects of his symptoms. In particular, Underhill objects to the ALJ's reliance on his activities of daily living, which the ALJ said were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 24. The ALJ noted Underhill's continued ability to drive, hunt, ice fish, pick up his four-year-old grandchild, and perform yardwork and household chores:

> He testified he cannot drive for long periods of time because his lower and mid back begin to hurt, yet during his consultative

5

> examination he said he can drive without problems for 2 hours at a time. He stated he can only sit for about 45 minutes and walk a quarter of a mile, but he testified he also goes hunting and ice fishing. He stated that he can lift about 20 pounds, but testified he can occasionally pick up his 4-year old grandchild. Further, he acknowledges that he performs some yard work and household chores, if with slightly more pain.

*Id.* (internal citations omitted).

Underhill raises two objections to the ALJ's credibility analysis. First, he says that the ALJ failed to explain how his activities of daily living supported her conclusions about Underhill's RFC. One of the ALJ's key duties is to "build a logical bridge" from the evidence to her conclusions, including when assessing subjective complains. *See Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017). Underhill says that the ALJ failed to build a logical bridge between her finding that Underhill could drive, hunt, and ice fish with her conclusion that Underhill could stand for six hours out of an eight-hour workday (which is the amount of standing required for "light work" under the Social Security regulations, *see* SSR 83-10, 1983 WL 31251, at *5–6). Being able to drive for two hours at a time doesn't "illustrate an ability to stand for 6 hours." Dkt. 13, at 10. Nor does going hunting or ice fishing "illustrat[e] that [Underhill] could stand for 6 hours of competitive work, 5 days a week." *Id.*, at 12.

The court of appeals has "repeatedly warned against equating the activities of daily living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). This is both because an ability to perform a particular activity may not translate into an ability to work full time and because a claimant may perform an activity at home only because he has no other choice. *E.g.*, *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal

6

daily activities" such as preparing simple meals, weekly grocery shopping, taking care of family members, and playing cards "do not establish that a person is capable of engaging in substantial physical activity").

But the ALJ did not consider Underhill's activities of daily living for the purpose of determining whether he was capable of full-time work; she considered them in evaluating his credibility. The Social Security regulations expressly permit ALJs to consider a claimant's daily activities "in assessing whether his testimony about the effects of his impairments was credible or exaggerated." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing 20 C.F.R. § 404.1529(c)(3)(i) and SSR 96-7P, 1996 WL 374186, at *3). The ALJ's opinion makes clear that she was discussing Underhill's activities of daily living as one of five separate reasons why she didn't fully credit Underhill's own account of his symptoms. *See* R. 24–25.[3] These activities were relevant because they suggested that Underhill's account of his symptoms wasn't entirely accurate, not because they suggested that Underhill was capable of standing six hours per day. The ALJ's conclusion that Underhill could stand six hours per day appears to have been based on a 2016 agency consultant opinion from Dr. George Walcott, who opined that Underhill could stand or walk "[a]bout 6 hours in an 8-hour workday." R. 132. But Underhill does not challenge the ALJ's handling of that opinion in this appeal. So the court will not remand the

---

[3] The other four reasons included (1) physical examination results that were inconsistent with Underhill's statements; (2) Underhill's conservative treatment history; (3) the relief Underhill reported experiencing from prescribed treatment; and (4) the absence of any treating or examining source opinion indicating that Underhill is currently disabled. In his reply brief, Underhill argues that these reasons are unsupported by substantial evidence. Dkt. 16, at 4–7. But Underhill did not challenge these aspects of the ALJ's decision in his opening brief, so he has waived these arguments. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

case based on Underhill's argument that the ALJ equated his activities of daily living with an ability to work full time.

Underhill's second objection to the ALJ's credibility analysis is that the ALJ misrepresented or exaggerated his activities of daily living. He identifies three such instances. First, the ALJ invoked Haker's consultative examination report, which stated that Underhill "is able to drive without problems for at least two hours at a time," R. 320, to cast doubt on Underhill's assertion during the hearing that he "can't drive for long periods of time" due to back pain. R. 73. But Haker's report was from 2013 and didn't capture later developments, such as a psychiatrist's note from May 2018 indicating that Underhill was "drowsy from meds so [he] doesn't drive a car." R. 452. Second, the ALJ implied that Underhill was still going hunting. But at the hearing, Underhill testified that the last time he had gone hunting was "[t]he year before last," R. 86, prior to the amended disability onset date. Third, the ALJ stated that Underhill could perform some yard work and household chores "with slightly more pain." R. 24. Underhill testified that he could vacuum on "[s]ome days," and that he "[s]ometimes" did yard work (although "mostly [his] wife has to do it"). R. 85. But the ALJ didn't cite anything in the record suggesting that these activities increased Underhill's pain only "slightly."

Underhill is correct that the ALJ's summary of his activities of daily living doesn't capture the nuances of the underlying record evidence. But that paragraph was just one component of a broader discussion of Underhill's credibility, which Underhill doesn't otherwise challenge. The court is not persuaded that the three marginal inaccuracies or omissions identified by Underhill render the ALJ's overall credibility analysis "patently wrong," which is what is required to justify a remand. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see,*

*e.g.*, *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility assessment even though some of his reasoning was not supported by the record).

None of the three arguments that Underhill raises on appeal demonstrate that the ALJ's opinion is unsupported by substantial evidence. The court will affirm the ALJ's decision.


ORDER

IT IS ORDERED that the decision of Andrew M. Saul, Commissioner of Social Security, denying plaintiff Larry Lee Underhill's applications for disability insurance benefits is AFFIRMED. The May 28, 2020 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered May 21, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge